Sewall, C. J.
The defendants are charged, as the executors of the last will of James Weeks, deceased, upon a promise by him in his lifetime, by his note in writing, March 15, 1808. The promise alleged in the plaintiff’s declaration, and proved by the note, is to this effect: that, in consideration of 2195 dollars paid by the plain tiff to James Weeks, he undertook .and promised to account with, and pay over to, Margaret Jackson, the plaintiff’s daughter, said sum of money on his arrival at Portland. (a) The [ * 151 ] plaintiff * avers that James W., after the receipt of the money, did arrive at Portland: but that he never, in his lifetime, paid over the sum so intrusted to him to the said Margaret, the daughter, or accounted for it to the plaintiff; and that the executors had also neglected to pay over or account for the same.
At the trial of this action upon the general issue, the defendants proved that their testator, at the date of the promise, alleged an.d proved, although master of a vessel in the West India trade, was in his age somewhat short of twenty-one years.
To this defence the plaintiff replies, first, a clause in the will of James W., expressing a bequest of his estate to his sisters and brothel s, after his just debts shall be paid therefrom.
The Court has determined heretofore, (5) in a case arising under *145 this same will, that this clause or bequest, if it may have that name, as it respects the debts, is no answer to a defence of infancy ; and that the disability of an infant to contract, unless in certain cases specially provided for with a view to his preservation and benefit, is such as renders his promise not only voidable, but void.
The plaintiff in this case insists, secondly, upon certain testimony adduced at the trial, the amount of which is, that James W., after he became of full age, having been called upon by the witness, then the husband of the plaintiff’s daughter Margaret, and questioned of the money received of her father, and whether it was convenient to pay it over, J. W. answered that it was not convenient to pay it at that time, but that he was then preparing for a voyage to Jamaica, with a cargo which he should there sell for cash ; and expressed his intention to proceed from thence to Honduras, and, on his arrival there, to pay the plaintiff the money due him on account of the sum received for his daughter. Other circumstances are proved by this testimony, which establish very satis factorily, if the witness is credible, an acknowledgment, on the part of J. W., after he came of age, that *he [ * 152 ] had received of the plaintiff the sum of money expressed in the note to him, and in trust for his daughter.
But there is no evidence of any express promise to the plaintiff himself, or of the renewal to him of the promise expressed in the note, (a) The most that can be made of the testimony is evidence of money in the hands of the deceased, intrusted with him, which he had not in his lifetime paid over or accounted for.
We have been, when this cause was argued, very explicit in expressing our sentiments of the defence resorted to in this case. The insolvency of James W.’s estate is no apology; and, however inexorable his other creditors may be, we cannot conceive that the executors are under any necessity of continuing the embezzlement of this money, or defending this breach of trust, so reproachful to the memory of their testator, for the benefit of his other creditors. *146 The defence being insisted on, however, we must decide according to the strict principles which apply in the case; and these are, we reluctantly say, against the plaintiff’s action, in the particular form in which it is conceived.
A general indebitatus assumpsit for money received for the use of the plaintiff might be maintained by the evidence adduced at the trial; but not this action on the original promise. There is no evidence of an express promise to the plaintiff, made by J. W. after he came of age; but there is enough proved to revive the debt, to establish the consideration upon which the law will imply a promise to the party injured. (6), (b)
The defendants refuse to consent to any amendment of the declaration ; and this being a trial on a review, it is out of the power of the Court to afford any aid by ordering an amendment.
If the plaintiff has any redress against this scandalous fraud, it must be by another action commenced in a better form ; and which it is possible (though on this point we give no opinion) may be maintained, notwithstanding any restrictions on his legal remedy, either by the statute of limitations or the statutes' respecting insolvent estates, (a)
[ * 153 ] * The witness relied oh for the plaintiff is, we think, competent; the objections suggested going only to his credit.
Upon the whole, the evidence reported in the case will not support the plaintiff’s declaration. The verdict for him is therefore to be set aside, and a

New trial granted.

 The promise alleged in the declaration was to account on his arrival at Portland ; but the promise m the note in writing was to account generally, without fixing any time.

 9 Mass. Rep. 62, Smith vs. Mayo & Al. Faris

 There was a promise to pay to the father for the plaintiff’s use, when Weeks should arrive at Honduras. In the case of a contract not under seal, this, it seems, was equivalent to a promise to the plaintiff. The party for whose sole benefit the promise was made may in this case sue thereon in his own name, although the engagement be not directly to or with him. — 1 Chitty, Pl. 5th ed. 5. — Starkey vs. Mylne, 1 Rolle, Ab. 32, pi. 13. — Dutton vs. Poole, 1 Vent. 318. — 2 Lev. 310.— T. Ray. 302. — T. Jones. 102.— Cowp. 443. — 5 Moore, 31—2 B. & B. 337. — Bul. N. P. 133, a. — Marchington vs. Vernon, 1 Bos. & P. 101. — Martin vs. Hind, Dougl. 142. — Carnegie vs. Waugh, 2 D. & R. 277. — See 4 B. & C. 664.—3 B. & A. 280. —1 Keb. 122, pl. 30. — Saville, 23. — Skinner vs. Stocks, 4 B. & A. 437. — Anderson vs. Martindale, 1 East, 497. — Dawes vs. Peck, 8 T. R. 332. — Hagedom. vs. Oliverson, 2 M. & S. 485—490. —■ When Weeks arrived at Honduras, therefore, an action might have been sustained on the promise.

 1 Rol. Mr. 18, 1, 1, 2. — 1 Lord Raym. 389. — 1 Burr. 323.

 How could the testator be legally bound by an implied promise resulting from a contract voidable by reason of infancy ?

 In Smith vs. Mayo & Al. Exrs. (9 Mass. Rep. 62,) a case arising under the same administration, the Court say, “ There is nothing in the case from which we .can infer that what was not in law a debt, could be considered by the testator as a just debt."